Case number 19-73E, Republic of Kazakhstan, Ministry of Justice Authority, Anatolie Stati, N.R. will be presented by the appellant, Mr. Berger, D.A. Mr. Berger, D.A. Thank you, Your Honors. May it please the Court, Jonathan Franklin for the Republic of Kazakhstan. This is not a case that could be resolved on a motion to dismiss. When all of the factual allegations of the complaint are taken as true and read in the light most favorable to Kazakhstan, they allege that the statis for more than ten years engaged in a multifaceted fraudulent series of fraudulent, related fraudulent schemes, most of which had nothing to do with litigation or arbitration. The complaint alleged that the statis engaged in these frauds in many different ways and targeted many different actual and prospective victims, including U.S. investors, U.S. trustees, bidders on assets, many of whom were in the United States, and the statis' own auditor, KPMG. Who are the U.S. investors? So this was in the original circular for the investing. This was in 2006. Investors in what? This is investors in the statis' operations in Kazakhstan, which included this plant that's at issue. In what form was the investment? The form was a circular under In what form was the actual investment? Limited partnership or what? Well, the investment was raised through a company called Tristan Oil Limited, and that's alleged in the complaint at pages 18 to 19 of the joint appendix. So these are investors in that company? In that company, which was owned by the statis, that was raising money for the statis' operations in Kazakhstan, including the plant at question, and these were U.S. investors. There was a circular that was issued in the U.S. Are they investors in that company? The investors The people you're talking about being injured, just a fact question. Yes. Are they investors in that company? I believe that they were investors in that. They were the indenture that was raised through Wells Fargo as the trustee. Why aren't they excluded as a consequence of our Western Associates case, which says that limited partners, shareholders, et cetera, are indirect, not direct victims, and therefore not a state? Because they're not. They are not connected with Kazakhstan. So that was a case involving a single discrete injury to a single group of investors, in that case limited partners, and the court said, well, for purposes of looking at a pattern in that case, we're going to consider them all together. These investors had nothing to do with Kazakhstan. This was years before the arbitration that we were victimized by. This will seem like two different questions. The question is, shareholders of a company, members of a limited partnership, who are injured in some way, are indirect, according to our case. The direct is the entity. Why is that not the case here? Yes, we are directly injured, but the reason that those victims are important, I think, is for the second part of the analysis, which I can get to now, which is the pattern analysis. That's the part I'm asking about. I'm talking about the continuity requirement and the number of victims, and the Western Associates would seem to exclude those as individuals. I don't think so, Your Honor. I think what Western Associates was saying is that where the limited partners are simply all together with the party that's sued, and it's the same injury inflicted on the same group. In that case, it was just a standard, fraudulent accounting, and the limited partners were all victimized together by the same act. This is different. These investors were victimized by entirely different acts than victimized Kazakhstan in years and years before. They were victimized because the studies circulated offerings in the United States that made false and fraudulent statements. They had false and fraudulent financial reports, and as we would show, again, as we said in our complaint, if allowed to amend the complaint, their auditor, KPMG, recently withdrew all of its audited statements for the studies during that period, which is an extraordinary thing to do. They are definitely not the same as in Western Associates. In fact, it's the exact opposite. What we have here is a string of different fraudulent schemes. Now, they're related, as they have to be for purposes of H.J.'s requirement. The pattern has to be both continuous and related. They're absolutely related, but they're different victims, and they're victimized in different ways, and it's not just H.J. Are there damages claimed other than the legal fees? The damages are the legal costs that we incurred as a result of the predicate acts that approximately injured us, but it is, I think, black-letter law that the plaintiff does not need to be injured by every single predicate act or part of the fraudulent scheme in order to state a pattern. In fact, that's normally going to be the case. If you have a fraudulent racketeering operation, it's going to be victimizing many different people, and that's going to be the pattern. But then the person that sues is going to be suing based on the acts that victimized it. And so the first mistake that the district court made, and I will get to pattern two, but the first mistake was simply just to say that litigation activities are themselves not actionable under RICO. That's wrong for two reasons. It's wrong both because the statute doesn't have any exception in it for predicate acts that happen to occur during litigation, and it's also wrong because even the district court recognized every court that has adopted some form of that exception, which has not included this court, has held that it does not apply, whereas here the litigation activities are part of a broader fraudulent scheme. The district court simply, I think, effectively pretended as if the first 134 paragraphs of our complaint just didn't exist. That's where we allege the fraud outside of the litigation, and it's important to establish the pattern, and that is the pattern that we're alleging here. The district court- Can I ask you about that? Yes. Your complaint is very precise in identifying what the pattern is, right? And it starts on page 73 of the appendix, and it starts with the arbitration. It's the arbitration. It's the Swedish annulment proceeding, and then it is enforcement and 1782 proceedings in the United States. Well, we have alleged, if you look at page 98 of the joint appendix, paragraph 283, we talk about the pattern of racketeering is described in paragraphs 1 through 279 of the complaint. We are including the entire complaint in the pattern of racketeering. Sorry, where are you? I'm sorry, I'm at page 98 of the joint appendix, paragraph 283, and what we're saying there is it's the entire complaint that constitutes the pattern of racketeering. That's your conspiracy count, but your substantive count is the language is from JA 81 to about 93, and it's very granular, and it's all about litigation. First of all, I would say, and we made this point, that the complaints are not required, and the court has never required the complaints to plead legal conclusions, and we made clear to the district court that the entire scheme included both the litigation activities and extended backwards to the other non-litigation activities. And in this case, I would actually point the court to its own holding in Philip Morris. In Philip Morris, the court found a pattern of racketeering activity against a single defendant based on only four letters, mail fraud, four letters that were sent, none of which itself was fraudulent or false. They were sent by lawyers to individuals threatening litigation, and the court found that that alone stated a pattern of racketeering activity because the letters were sent in furtherance of a broader scheme, and the scheme itself did not involve any other predicate acts committed by that defendant. I think we have alleged far more than that in this case. I think Philip Morris is effectively more than the United States alleged in the government tobacco case. Far more predicate acts that affected us. That's a pretty big case. What's that? That was a pretty big case. It was a big case, Your Honor, but it had a single goal. The goal was to defraud the American public about the dangers of smoking. In this case, yes, there was at a generally broader level, the goal to defraud both the investors, the bidders, and ultimately Kazakhstan. And we have had in London a finding that there was a prima facie case that fraud was committed. We won that case because the Kazakhs dismissed it. Part of our allegations in this case are that the costs incurred in connection with that by the U.S. lawyers. Again, this is a motion to dismiss. All of the factual allegations need to be taken as true and measured against the standard of the legal standard. So if there was a pleading— Although, Mr. Franklin, you're—Franklin, I'm sorry. Your allegations are—your complaint is so clear about separating out what it says is the pattern, including in an appendix, and it is, as Judge Katz's question was indicating, all about the enforcement actions, the litigation activity, not the underlying— Well, with respect, Your Honor, the first 134 pages are not. And what we did is we listed certain predicate acts that approximately affected Kazakhstan. And those were the ones that we knew about, and those are the ones that were in connection with litigation. But in Philip Morris, there were only four predicate acts alleged, four mailings, and yet they were considered to be a pattern because they were part of a larger fraudulent scheme. And that is because, as the Court said, the mail fraud statute doesn't require that the actual mailings themselves be fraudulent. It just requires that they be in connection with a scheme or artifice to defraud. And there I would say that the scheme or artifice to defraud, we have absolutely alleged, is way broader than just the litigation activities that affected us. We said that both in our complaint. We said it to the district court in our opposition to the motion to dismiss, and the Court dismissed it primarily in a footnote on the ground that we didn't allege that these other acts injured us. And that's a legal error, Your Honor. That's the error that the Court made. I think it was footnote nine, maybe it was eight or nine. The Court said, well, they didn't injure us. And that's not the standard. The standard isn't that every predicate act or every part of the fraudulent scheme injured the plaintiff who is suing. And that's, I think, where the key mistake comes. It may be some of the confusion that I'm hearing today. Mr. Franklin, if there were no fraud in inflating the value of the LPG plant, if there were no fraud there, then all the rest of it goes away. If there were no fraud in the... In inflating the value of the plant. Everything else is you're continuing to act on, intensify, try to profit off of, try to make good on that fraud. There was fraud in connection with the failure to disclose the related party transactions. But one would not have needed to do that if one were never harmed, or I guess that would... Well, no, I think that the investors would want to know, as the indenture requires, whether or not there were related party transactions, and those were not reported. They needed to know that all of the financial statements were correct, and we have said that they're not. So, yes, I mean, I think that's a major part of it, but I don't think it's the entire case. But it certainly is the case, and we have plausibly and properly alleged that there was that fraud that occurred. I see I'm under my rebuttal time, but I would, if the court has further questions, or I would like to... It's not. Thank you. Save your time. Okay. Good morning, Your Honors. May it please the Court, I'm James Berger of King Spaulding LLP, here for the defendants' appellees, who I will refer to as the study group, for convenience's sake. Your Honors, Judge Katsas, you made reference, and I think Judge Ballard, you did as well, about how all of what you read in the complaint is really about the arbitration and the follow-on litigation matters. And that's the way we see this case. We've seen an invitation made somewhat after the fact here for the court to go through the complaint in this case and just find things that might be other frauds that can be characterized as something other than litigation. But we think the district court approached this case exactly the right way and looked at it, made the correct rulings, and we would ask this court to affirm them. The RICO claims in this case have at least three fatal defects in them. First, we'll just say that the claims generally seek a ruling that focuses on the prosecution and the attempted enforcement of an arbitration report. It focuses on one aspect of that arbitration. It focuses on a single appropriated asset, the LPG plan, which constituted about half of the award. This isn't as though these actions that were alleged by the Republic created an entirely new liability. They did not. My client's assets in Kazakhstan were all confiscated and expropriated. The LPG plan represents one of those. And the RICO case that has been presented in response to the confirmation of this arbitration award is based on a legal theory that no U.S. court has ever credited. And it's one that if this court were to accept, you would essentially be giving an invitation to everybody who ever loses an arbitration or a litigation to bring a RICO claim so long as there are any disputed factual issues set forth in a litigation paper that was transmitted by mail or by wire. That's a great policy argument, but where do we anchor it in the text of RICO? I would direct the court not to look so much at the text of RICO, but to look at the text of the mail fraud statute. I think the courts that have addressed this most effectively have said this isn't mail fraud. It may be malicious prosecution. It may be an abusive process, but it's not mail fraud. And if it were, just about every litigation that happens in the United States where there are disputes over facts would give rise to a potential RICO action. You can always plead that your adversary lied about something in a litigation paper, and he emailed it to the court. Mr. Berger, in a case in which, just hypothetically, if there were fraud discovered after an arbitration had occurred, is there any recourse either under the law governing enforcement of an arbitration or otherwise does that person have any recourse, or is the finality and the inability to look under the hood that is the hallmark of arbitration just to throw an immunity over that? It's not an immunity, Judge Pillard, and there are definitely things that a party who feels aggrieved by any sort of misbehavior in an arbitration can do. The New York Convention sets up defenses. There is a public policy defense which allows people to bring arguments like this up. There's Rule 60, which is available to any litigant here in the United States. If they feel as though an award was confirmed wrongfully in the United States, Rule 60 is a fairly broad reservoir of relief that a party can use. Civil Rule 60? Rule 60B, relief from judgment. Well, after something's been enforced? That seems like even weaker than substantively in the enforcement action itself, which you're saying is unavailable. I'm not saying that. I'm saying that RICO is unavailable in this case, and that's been our position throughout, but we have not said, and goodness knows we've had to litigate a lot of cases in a lot of different places where these issues have been raised, and I think it's important in addressing Your Honor's question about that, the fact that these issues have been raised. They have been litigated. All of the evidence that was sought to be relied upon in this case has been presented to the courts in Sweden who looked at that evidence and said, no, thank you, we're not interested. Why did you discontinue the action in the U.K.? Your Honor, my clients made a determination to discontinue that action. What happened in the U.K. courts is a matter of record. I don't know that it would be entirely appropriate for me to disclose those deliberations to the court. They're privileged. So in terms of why, we had the right to do it, and we did. Statements were made on the record. The English judge asked questions about them. I can't really quote them here because I just don't remember what exactly got said, what was said. But there are reasons that have been given that are on the record. I don't think I should really talk about my clients' deliberations about that here in an open courtroom. No, I mean, the point is you were asserting that everything's come out, and some of what's come out some tribunals have thought is a matter of concern. They have. And other tribunals have looked at it and said that it's not. And I think it's an important thing for us to bear in mind that the U.S. District Court for the District of Columbia looked at all this and said it wasn't interesting. That case then came before this court. Judge Cassis was on the panel when it came before this court, and that judgment was affirmed. There was a petition for certiorari, which was denied. This has all been hashed through. This has all been litigated. There have now been, and we made a 28-day submission to the court in advance of the argument today, there have been judgments in Belgium. There's now been a judgment in Luxembourg. There should be a judgment coming fairly soon in Holland. Courts have looked at these allegations. They've looked at them very closely. And with the exception of the one court in England that looked at it and said, we see prima facie evidence here. They didn't enter a judgment in the republic's favor. They said, we see something here that we want to take a further look at. The decision was made to discontinue that action, but the other actions around the world have continued, and they've continued on to judgment, particularly in Sweden, where the Swedish courts had supervisory jurisdiction over this award. This is their case. They looked at it all, and they said, this is all okay with us. When you say it's all been hashed out, I mean, I understand that actually enforcing an arbitration means hashing out nothing of the underlying allegations. And when you force an arbitration award by its nature, it's quite pro forma. So the only place that anything was hashed out conceivably was in the SVEA court, where Kazakhstan tried to get their attention on information that it didn't have at the time of the arbitration. So under the international framework, Judge Pillar, that's how it gets hashed out. And there is a supervisory judicial function in the seat of the jurisdiction where the arbitration took place. All of this evidence was put before the SVEA court. They saw it all. They heard about it. The hearing was a multi-day hearing that they conducted on this. There was nothing pro forma about it. It was a lengthy hearing involving an airing of all of these allegations. At the end of the day, they said the award is valid. So somewhere in this entire odyssey, and it has become somewhat of an odyssey, there has to be some finality. These issues have been raised. They have been talked about. They have been litigated extensively. And they've been litigated in this jurisdiction in front of a district judge of the district court in this district, before this court, in fact. And at some point, it's got to be over. The way law normally achieves finality is through preclusion doctrines. So why shouldn't we, with regard to all of your arguments about what happened in this case and about the dangers of every RICO case giving rise to a RICO follow-up, why don't we handle that by simply asking whether there is any award or judgment here entitled to preclusive effect, rather than trying to create this litigation exception in the mail fraud statute, which I just don't see. Your Honor, I think that's a very good idea. And I would have gotten to that in a point in my argument. I think there's very clearly, if the court looks at the proceedings that occurred. You've got the arbitration award itself. You have the judgment in Sweden. You have the district court enforcement decision here. Which of those gets preclusive effect? And is it claim preclusion or issue preclusion? It's claim preclusion. And I would say that I don't think you have to choose just one. I think the fact that there are multiple options there is actually something that weighs very heavily in terms of showing the merit of what Your Honor is suggesting. Okay, so where was the RICO claim? Where could the RICO claim have been litigated? Not in Sweden, right? Well, you can't litigate a U.S. RICO claim in Sweden. But if you look at claim preclusion as sort of a subject matter transactional type of doctrine, which is the way we understand it and the way we understand the law in this circuit and in D.C. to define it, it's the same allegations. The same things were brought up in Sweden. Fair enough. And if I could just ---- It's fair enough. But that starts to sound a little bit more like an argument for issue preclusion, which is that in the Swedish court, the question whether the award was procured by fraud was teed up, and that should bar the litigation here. And it would have to be issue preclusion, wouldn't it? I'm sorry. No, but, I mean, you didn't raise issue preclusion. No, and I still think it's, with respect to Your Honor and the suggestion that it's not, I do think it is claim preclusion. The claim here, the relief being sought is relief from this award. I mean, you're right about the transaction or occurrence point, but there is an exception to that for claim preclusion where the cause of action at issue could not have been raised. Right. So I don't ---- And, you know, conduct subsequent to is part of their pattern, alleged pattern is the conduct that was ---- Well, I can address the pattern issue, and I think it's important to focus on, as Your Honor did during my colleague's argument, this is all about the same thing, and this is all about the LPG plant. You can make the timeline as long as you want, say that, well, they did this and they did that and they did the other thing, but if you look at the complaint, it's very, very clear that the allegations have to do with the valuation of a single asset that was expropriated by the Kazakh government and how the claims about the value of that asset were set forth during arbitration. And then to say that every time the liability number was mentioned in a subsequent pleading, whether it be under Section 1782 or in an enforcement proceeding in the U.S. or elsewhere, that that's a new act of mail fraud. It's the same thing being done over and over and over again by the same people with respect to the same potential victim. Sorry, are we talking about preclusion? I just wanted to talk about the pattern issue because it sort of came up in the course of that question, but when we talk about preclusion, I do think that if you look at the arguments made broadly enough, and there are some fairly broad issues that are before the Court today. Should this arbitration award be enforced? This Court already made that decision, and so now we're confronted with another action that says, even if it is, it should be this RICO case, which is in effect a clawback. That's really what it looks like, and so we would say that transactionally it is the same thing. You are fighting about the same award that we fought about here a year ago. Well, Mr. Berger, what are we to make, for example, of allegations about conflicting claims of value of the LPG plant in the veto arbitrations and the SEC arbitrations? There are different methodologies, and one hikes up and the other hikes down. I don't think that's before the Court today, Your Honor. It's in the complaint. They talk about the real net value of the LPG plant versus the reported value in the Kazakh book. They're pointing to that there's different, that your clients are speaking out of different sides of their mouths depending on what serves them, and to the extent that that's alleged, if we think there's something inadequate about this complaint, why shouldn't we allow Kazakhstan to replete, to make it clear? Well, that wasn't alleged. This is one of the predicate acts. It's all background and coloring material. I don't mean to discount it. There's a lot of stuff that's in there, but when the Court gets to the point where they're saying, here are the mail frauds, boom, boom, boom, boom, boom, they've listed them. There's a table in the middle of the complaint that says these are the mail and wire frauds. They're all litigation papers. Well, if we were to just set aside the litigation exception, which I haven't heard any textual response to Kazakhstan's argument. It's not in the text, and we're bound by Supreme Court precedent, our own precedent that says we don't create non-textual exceptions to RICO. So if we're just looking at the pattern question, and their allegations of a pattern are premised centrally, I think, as you acknowledge, on this question about whether the LPG pricing was fraudulent or not, it seems like that's instinct in every single one of the predicate acts that they allege, that that is a fraud. And they've alleged things like what I mentioned in paragraph 13 and in paragraph 37 of the complaint, that your clients were saying one thing, you know, to one party where it suited them, and another thing to another or to one arbitral forum and to another arbitral forum. So what are we to make of those allegations that would seem to be prima facie allegations of fraud? So I would suggest, Your Honor, and I see my time has elapsed. I'll be quick about this, but what I would say in response to that is that in a 110-page complaint, or however long it was, that is pled out that granularly, where you actually do make arguments about the theories and, you know, here's the mail fraud, here's the wire fraud, here's the money laundering, to throw in all this other stuff and say, well, you know what, if we didn't say it the right way, we're going to leave it up to you to find fraud, that's not the court's job. Well, there's no question it was central to their theory that the studies were playing fast and loose with the value of the LPG plan. That's not hidden in their complaint. It's central. So then they need to allege that those acts are indictable under the mail fraud or the wire fraud statute, and they haven't done that. That's what they're required to allege in a RICO case, and they did not allege that. They alleged that the sending of litigation papers to courts and tribunals around the world constituted mail and or wire fraud. They didn't say that any of that stuff was mail or wire fraud. They're asking you to find it. They're asking you to say, well, sounds pretty bad, so it's probably mail or wire fraud. But those are statutes with technical requirements in them, and those things were not alleged in the complaint. Assume for the sake of argument we read the pattern allegations as encompassing all the background stuff at the beginning. Pattern or no pattern? No, it's not a pattern. It's a single thing. Why not? It's a linear set of transactions. It's all about, Judge Pillard's right, it's all about inflating the value of the plan, but on my assumption, you at least would have different victims, right, U.S. investors, the bidders, when they tried to sell the plan. I mean, the way the case is played, Judge Cassis, I just don't see it. What I see is a party that lost in an arbitration, has a big damage award that's been ordered to pay by now but the fact that they have to defend these enforcement actions because they won't pay a judgment that now several national courts have imposed against them, there's an approximate cause break right there. If those are the damages, the reason they've incurred those damages is because they're ignoring court orders. They're refusing to pay lawful court judgments that have been rendered in the ordinary course of judicial proceedings. So it's good to keep sight of that also, but the victim, okay, they say, they defrauded a U.S. investor and they defrauded this person and that person. At the end of the day, the complaint makes very clear that the harm here is the fact that they're being required to pay legal fees to defend themselves against enforcement proceedings on a judgment that is awful. Well, but the pattern can be broader than the line of causation to the injured plaintiff. I understand, and I was attentive when you were asking questions of my colleague during his presentation today, but I don't want to, when you look at this case, and I think Judge Katsas, you said it before, when you read the complaint, it's all about one thing. It's about the LPG plan. It's about the valuation of an asset and whether or not the tribunal was misled in terms of attaching a value to that asset for purposes of then awarding damages to a party whose assets were unquestionably expropriated and whether or not there's, as a result of that, a flaw in the award and the judgments that have been rendered on that award subsequently. That's what this case is all about. And when you look at Edmondson and this Court's decisions and other circuits' decisions about pattern, they make clear that a linear set of transactions like this is not a pattern. Okay. No further questions? We'll hear from them. Okay. I thank the Court for its attention. Thank you very much. We'll round it up to two. I'm sorry, what did you say? We'll round it up to two minutes. Thank you so much, Your Honor. Just a few points, Your Honor. There was some discussion about what has been hashed out. Nothing has been hashed out. Can I ask about this discussion you've been having with the Court on the question of whether litigation claims can be RICO violations or part of RICO and the problem of whether they're textual? So what you do, even if they're not textual, there is something that overrides the text, which is the First Amendment. And in the Noor-Pennington line of cases, the professional real estate case, the Supreme Court said, I'm just trying to get the exact quote, defines sham litigation to be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. And unless it's sham litigation, notwithstanding the words of the antitrust laws, it cannot be part of an antitrust case. So picking as a given that mere litigation is okay, unless it's sham litigation, it can't be part of the antitrust. It can't be part of RICO. Do you agree with that? Well, I don't agree with the last step, Your Honor. First of all, the other side has not raised Noor-Pennington. Well, the cases that are quoted, some of them cite the sham litigation part of Noor-Pennington. Right. But I think fraudulent statements of litigation are not protected. They're not First Amendment. Well, it has to be objectively baseless in the sense no reasonable litigant could reasonably expect success on the merits. Now, they have gotten success on the merits on some of these. And so those would have to be excluded from your list of predicate acts. I don't think so, Your Honor, and the following is true. People can be prosecuted for the predicate acts and have been prosecuted for things that occur in litigation that are fraudulent. I don't think the Noor-Pennington Doctrine is a blanket immunity for RICO predicate acts that occurred. I'm saying it's not. I'm accepting that for purposes of this argument and going to the question of it must at least be sham. It must be sham litigation, not just ordinary litigation, and not just false litigation. It has to be sham litigation. If you're challenging the litigation itself, itself may be under antitrust laws. But that's what you're doing here, right? These are underlying mail fraud or wire fraud schemes. And to be a violation of a mail fraud scheme, it has to be something that would not violate the First Amendment to make it part of a mail fraud scheme. And we have cited cases in our brief, Your Honor, that fraudulent statements made during litigation or in connection with litigation are not immune because they are not protected by the First Amendment. So if that issue were raised on remand. Which case is that? So I'm sorry I don't have the exact pages of our brief, but we did address when we talk about the policy rationales of some courts. This is not policy. This is the First Amendment. I understand that. But some of the courts have referred to the First Amendment as the policy rationale, and we address that in our brief. And I apologize I don't have page 28. So we cite Wieland v. LaBelle, however broad the First Amendment right to petition may be, it cannot be stretched to cover petitions based on known falsehoods. We discussed the Philip Morris case, which also had an argument that because it was legal in nature, it couldn't be a predicate act. Again, if they were to raise this issue, we would brief it on remand entirely, and we would, I think, show to the court that this, there is no norm for immunity here. If I might, I'm sorry I've gone over. Now you've got exactly, you can have the remainder of your time. I stole some of yours. Thank you, Chief Judge. Go ahead. Nothing's been hashed out. The closest to being hashed out I think was the London proceedings, and Judge Pillard. It's not on the record, but I will submit it if I want, if you'd like, that the judge, they argued when they dismissed their case that it was for cost reasons. The judge said that is incredulous. You dismissed your case because you did not want a final judgment from me on fraud. That ended up getting reversed, but only on the ground that they had the absolute right to do it. They dismissed it on condition that they paid all of our costs in that proceeding, and they would never bring a proceeding in England again. In terms of the Swedish, that case is also held that in London that the Swedish proceeding wasn't preclusive with London, and it's preclusive for the reason I heard that my friend on the other side say, and that is that a U.S.-RICO claim couldn't be brought in a Swedish proceeding to a null and arbitral award, and in London the court said effectively the same thing under London law, English law. But this is a RICO action predicated on fraud, and the fraud is in substantial part securing this award, right? And the question whether this award was secured by fraud seems to have been precisely the issue teed up in the Swedish court proceeding. Teed up under Swedish law, Your Honor, and not resolved on its facts. So there's no... Not resolved... On its facts. So that was my question. To the extent that what you're really claiming is, and I understand you said, well, you know, the lack of arm's length dealing with also aspects, but really the heart of the matter from the perspective of your clients is that they claim that this company was jacking up prices, and in order to do that they were using, you know, entities under their own control, but really the heart of it is this jacking up of prices, and that was at issue in the arbitration, was it not? No. No, it was discovered after the arbitration. That was not an issue in the arbitration. It was an issue in the subsequent motion that we brought in the Swedish courts to vacate under Swedish law. The Swedish courts did not make a factual finding on the fraud, whether it occurred or not. Did they look into it at all? They looked into it, and they said, as a matter of Swedish public policy, even if it occurred under the very limited grounds available to vacate an arbitral award in Sweden, which are exceedingly limited, and they are in this case in this country as well, no, it wouldn't rise to that level. But it's not claim preclusion because we couldn't have brought this claim. It's not issue preclusion because it wasn't resolved. Although in a way it was, now it's coming back to me, and I apologize, that they had said,  which they thought was objective for the, whatever, $199 million. Yeah, but the offer was, the bid, the indicative bid was made actually by a Kazakh company, and that was based entirely on the fraudulent statements, fraudulent financial statements that they had submitted. That's the allegation. Possibly factually in error, but entered as a matter of sidestepping the fraud allegations and approved by the high court. Yeah, but the Swedish court didn't make any determination that the fraud I just discussed, the jacking, the fact that the indicative bid was based on the fraudulent statement, didn't reach that. It said for purposes of Swedish public policy, all we care about is whether there was false testimony directly presented to the arbiters, and that's all we care about. This is something that's puzzling to me, and it has to do, I think, with these kinds of projects. If they're packing, I know this goes to the merits of the underlying, but it's part of understanding what the Swedish court did. If something has been way overpriced, it sounded like the Swedish court was saying, well, the market is telling us it wasn't overpriced because people were bidding that amount, but you're saying the pricing is more input-based? Yes, people were bidding based on audited, supposedly audited financial statements, which we would show now have since been withdrawn by the auditor, and the audited financial statements were false and fraudulent because what the studies were doing was they had a sham company that they owned, and they were charging that sham company hundreds of millions of dollars for things that they already had bought, and what that means for the investors in the United States is they were told that this project costs hundreds of millions of dollars more than it actually did. That money was raised by the investors, and it went straight into the studies' pockets. And are those investors suing? The investors reached a deal with the studies, so they did sue. The investors reached a deal, and what they're essentially going to do is they're going to get the money that the studies are trying to get from us, so it's all part of this whole fraud, and to get back to the pattern, which is the last thing I really would like to mention. Before you do that, can I just tie down the Swedish court proceeding? Yes. As I understand it, the ground of decision by the Swedish court was that even if there was fraud, it didn't impact the amount of the bid by the Kazakhstan entity, and therefore didn't impact the amount of the award. I apologize. I don't have the Swedish decision before me, but I don't think that's a correct reading of it. I think they said that they weren't looking at whether it impacted the value of the bid. They were just looking at whether there were false statements made to the arbitral tribunal. If I'm mistaken on that, I apologize. I don't have that decision in front of me. But in terms of pattern, all I would like to say is that I... Well, I'll check if that's my understanding of it, but if my understanding of it were correct... If there was a final finding in Sweden that, for example, the indicative bid wasn't in any way based on the fraud, then I still would say there would be no preclusion because it would be under Swedish law, Swedish principles, Swedish versions of proof, and a very limited record of... Sounds like an actual determination that you can't show causation. Fair enough, but I actually just heard the other side say they're not raising issue preclusions. So I think we're way beyond where we want to be. I would say that all of these, to the extent they're preserved, would be available on remand, and we should resolve this case. The district court resolved it wrongly, but I think on the correct basis, which is does this complaint state a RICO claim, and it does, and it does because predictive acts can involve acts of litigation. Every court has said that, even the courts that have some sort of an exception. And by the way, it's not every case that will end up being a RICO case. What the courts are trying to do here, and I think rightly, is saying you can't dress up a single case of malicious prosecution as a RICO case. We're not going to do that. I think where they go off the rails is probably patterns is the better way to deal with that kind of a situation. And so that's why our complaint has a broader pattern alleged, and with respect to Judge Cassis, I do believe that 283 of the complaint we allege very broadly that the pattern includes everything that we've alleged. And it doesn't always have to affect us. And then we said in the motion to dismiss, also we said to the district court, in the opposition to the motion to dismiss, at page 114 of the appendix, that, in fact, the scheme is much broader than litigation. It involved, as we said, to the district court. Okay, let's just give the citation. Okay, I'll just read one sentence, and that'll be it. Just give us the page, that'll be it. Page 114 of the appendix, and what we said was the scheme is much broader than litigation, and it states a RICO pattern. We'll take the matter under submission. Thank you so much, Your Honor.
judges: Garland, Pillard, Katsas